# Illinois Official Reports

## Appellate Court

---

**Greenpoint Mortgage Funding, Inc. v. Hirt, 2020 IL App (1st) 190832**

---

| | |
|---|---|
| Appellate Court Caption | GREENPOINT MORTGAGE FUNDING, INC., Plaintiff and Counter-Defendant-Appellee, v. CYNTHIA HIRT; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; GREENPOINT MORTGAGE FUNDING, INC.; TOWN PLACE CONDOMINIUM ASSOCIATION; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants (Cynthia Hirt, Defendant and Counter-Plaintiff-Appellant). |
| District & No. | First District, Sixth Division<br>No. 1-19-0832 |
| Filed<br>Rehearing denied | March 27, 2020<br>April 24, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CH-16652; the Hon. Darryl B. Simko, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Douglas M. Matton, of Matton Law Offices, and Stephen E. Brown, both of Chicago, for appellant.<br><br>Jeffrey D. Pilgrim and Matthew O. Stromquist, of Pilgrim Christakis LLP, of Chicago, for appellee. |

Panel          JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Mikva and Justice Cunningham concurred in the judgment and opinion.

## OPINION

¶ 1      This case began as a mortgage foreclosure action by GreenPoint Mortgage Funding, Inc. (GreenPoint), against Cynthia Hirt, who filed affirmative defenses and counterclaims seeking rescission of the loan and damages pursuant to the Truth in Lending Act (Act) (15 U.S.C. § 1601 *et seq.* (2012)). As the litigation was pending, GreenPoint assigned the mortgage to U.S. Bank National Association (U.S. Bank), U.S. Bank and Hirt agreed to refinance the mortgage, and U.S. Bank dismissed the foreclosure action. GreenPoint and Hirt litigated Hirt's counterclaims for rescission and damages, with the trial court granting summary judgment for GreenPoint regarding rescission in February 2016 and statutory damages in March 2017. On appeal, we affirmed the March 2017 summary judgment on statutory damages but reversed the February 2016 summary judgment on rescission, finding that a question of fact remained as to whether Hirt had three days or three years to seek rescission under the Act. *GreenPoint Mortgage Funding, Inc. v. Hirt*, 2018 IL App (1st) 170921, ¶ 3. On remand, the trial court held an evidentiary hearing in February 2019 and entered judgment for GreenPoint in March 2019.

¶ 2      On appeal, Hirt contends that the March 2019 judgment was against the manifest weight of the evidence and that GreenPoint violated the Act by including in a financing statement fees prohibited by the Act. For the reasons stated below, we affirm.

¶ 3                                I. JURISDICTION

¶ 4      GreenPoint filed its foreclosure action in May 2008, and Hirt filed her counterclaim for rescission and damages in April 2009. The foreclosure action was dismissed without prejudice in October 2015. The circuit court granted summary judgment for GreenPoint as to Hirt's rescission claim in February 2016 and statutory damages claims in March 2017. Hirt appealed, and in January 2018, we affirmed in part, reversed in part, and remanded for further proceedings. The circuit court held an evidentiary hearing in February 2019 and entered judgment for GreenPoint on March 22, 2019. Hirt filed her notice of appeal on April 18, 2019. Accordingly, this court has jurisdiction over this matter pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. May 30, 2008).

¶ 5                                II. BACKGROUND

¶ 6      Hirt refinanced her mortgage loan on certain real property in Schaumburg, Illinois, in May 2005, and GreenPoint lent Hirt $219,200 secured by the property. Hirt failed to make a required payment on the loan on February 1, 2008. On February 12, 2008, Hirt sent GreenPoint a notice of rescission pursuant to the Act asserting that GreenPoint failed to comply with the Act's various disclosure requirements and that she was therefore entitled to rescind the loan. GreenPoint received Hirt's notice of rescission on February 15, 2008.

¶ 7                                      A. Initial Litigation

¶ 8        GreenPoint filed a mortgage foreclosure complaint in May 2008 alleging Hirt's failure to make monthly payments from February 1, 2008, onward. A copy of the mortgage was attached.

¶ 9        Hirt filed her appearance, answer, and affirmative defenses in January 2009, denying every allegation in the complaint. Her affirmative defenses alleged that she mailed a notice of rescission to GreenPoint on February 12, 2008, which it received on February 15, because it had failed to comply with "various requirements of" the Act and related regulations (12 C.F.R. § 226 (2008) (Regulation Z)) by not providing "an adequate number of copies of the Notice of Right to Cancel" (hereinafter Notice of Right) or "adequate disclosures" under the Act. She alleged that her notice rendered the note and mortgage void *ab initio* so that GreenPoint had no security interest in her property and could not maintain a foreclosure action. Hirt asked the court to dismiss the foreclosure action with prejudice, declare the entire loan transaction void, order GreenPoint to refund any money she paid under the transaction, award statutory damages for GreenPoint's alleged failures to make proper disclosure and to honor the rescission, and award costs and attorney fees. Attached were Hirt's rescission letter and a certified mail receipt, with the former stating that Hirt was rescinding because of GreenPoint's "failure to comply with the Truth In Lending Act and its implementing regulations, including, but not limited to, Regulation Z."

¶ 10       In April 2009, Hirt filed her counterclaim against GreenPoint, asserting that it had violated the Act and Regulation Z by failing to (1) provide her with two copies of the Notice of Right and (2) properly and accurately disclose various terms of the loan agreement including the finance charge. Hirt asserted that, due to these violations, her right to rescind under the Act was not three days but three years so that her February 2008 rescission notice was timely. She alleged that GreenPoint failed after the rescission to take any action necessary to terminate the security interest in Hirt's property or to return any money to her. Hirt sought termination of the loan transaction, refund of any money she paid under the transaction, statutory damages for GreenPoint's alleged failures to make proper disclosure and to honor the rescission, actual damages, and attorney fees. Attached to the counterclaim were the mortgage, the loan note underlying the mortgage, and the rescission letter and certified mail receipt.

¶ 11       GreenPoint filed its answer to the counterclaim in May 2009, denying that it violated the Act and Regulation Z and specifically denying that it failed to (1) provide two copies of the Notice of Right or (2) properly disclose the terms of the loan agreement. GreenPoint denied that Hirt timely rescinded the transaction but acknowledged the content of the purported rescission letter and the mailing receipt. GreenPoint acknowledged its refusal to release the mortgage or refund Hirt but denied any impropriety. GreenPoint acknowledged the contents of the note and mortgage and that the loan was not made to finance the purchase or initial construction of Hirt's property. GreenPoint asserted affirmative defenses of limitations, estoppel, *laches*, and waiver; reiterated that it properly made all disclosures and provided all notices; and claimed that Hirt would be unjustly enriched if she received her relief.

¶ 12       In the course of discovery, Hirt was deposed in August 2009. She acknowledged signing a receipt at the May 2005 closing that she was provided with two copies of the Notice of Right. However, she testified to leaving the closing with only one copy of the Notice of Right, which she did not realize until she reviewed her entire closing packet with her attorney in 2008. After she left the closing with the loan documents in the folder given to her, she went home and placed the folder into a file cabinet where it remained until she gave it to her attorney. She

never looked at the folder during that time, nor did she review it before meeting with her attorney. Hirt last made a payment on the mortgage loan in January 2008 and decided to not make further payments because she was in financial difficulty due to medical bills. She acknowledged signing at the closing a disclosure stating and defining the amount financed ($217,609.58), finance charge ($283,262.50), annual percentage rate (5.972%), monthly payment schedule, and total payments ($500,872.08) for the mortgage loan. Hirt understood that, if her rescission claim was successful, her loan and mortgage obligations would end but she would have to repay the amount she borrowed minus finance charges. However, she did not know if she could make that repayment. She did not have more than $200,000 in assets or in any bank account, nor did she own any real property other than the mortgaged property at issue.

¶ 13    GreenPoint moved to substitute U.S. Bank as plaintiff, which the court did in August 2014. U.S. Bank later moved to dismiss the foreclosure complaint without prejudice because Hirt had accepted a loan modification. In October 2015, the court dismissed the foreclosure complaint without prejudice, with each party to bear its own costs and attorney fees.

¶ 14                                    B. Summary Judgment

¶ 15    In November 2015, GreenPoint moved for summary judgment on Hirt's counterclaim, arguing that (1) it could not grant rescission of the loan and mortgage once it had conveyed its interest to U.S. Bank and (2) Hirt's claim was barred by her "admitted inability to tender repayment of the Loan" as provided in the Act and Regulation Z. GreenPoint also argued that Hirt's counterclaim was barred by the one-year limitation period in the Act for damages claims arising from failing to provide adequate disclosures. 15 U.S.C. § 1640(a), (e) (2012). GreenPoint argued that it did not violate the Act and Regulation Z as alleged because Hirt acknowledged in her deposition that she signed documents (1) stating that she received the requisite two copies of the Notice of Right and (2) disclosing the requisite terms of the loan and mortgage.

¶ 16    Hirt responded to the summary judgment motion, arguing that there was a genuine issue of material fact as to whether she received two copies of the Notice of Right because signing a document stating she received two copies created a rebuttable presumption, which she rebutted with her deposition testimony. Regarding the Act's limitation period, Hirt argued that section 13-207 of the Code of Civil Procedure (735 ILCS 5/13-207 (West 2014)) preserved her counterclaim. She argued that her rescission claim was not moot merely because GreenPoint had transferred its interest in the loan and mortgage, as rescission would involve the original issuer and all subsequent holders of the loan and mortgage, nor because she refinanced with U.S. Bank. She argued that alleged violations of the Act must be adjudicated before ability to tender repayment is considered.

¶ 17    In February 2016, the court granted summary judgment for GreenPoint as to Hirt's rescission claim but denied it as to Hirt's damages claims, finding that the latter were not time-barred because they were preserved by section 13-207.

¶ 18    In a pretrial conference memorandum, Hirt claimed that GreenPoint had included in the computation of the finance charge at the closing a $300 appraisal fee that the Act (15 U.S.C. § 1605(e)(5) (2012)) excludes from the finance charge to be disclosed under the Act. She alleged that "inclusion of the appraisal fee, and other prohibited fees, skewed the calculations

of the requisite numerical disclosures to her, thereby causing the aforementioned violations" of the Act.

¶ 19    GreenPoint then filed a supplemental motion for summary judgment, arguing that Hirt was raising the appraisal fee claim for the first time. It also argued that the appraisal fee was listed as a settlement charge at the closing but not included in the computation of the finance charge and that "the disclosed finance charge would still have been well within the tolerance for accuracy allowed" by the Act because the Act provides that no liability arises from a disclosed finance charge higher than the statutorily defined finance charge. 15 U.S.C. § 1605(f)(1)(B) (2012).

¶ 20    Hirt responded to the supplemental motion for summary judgment, arguing that the appraisal fee claim was inadmissible for summary judgment purposes under Illinois Rule of Evidence 408 (eff. Jan. 1, 2011) because it was disclosed during settlement negotiations. Hirt stated that she did not previously mention the appraisal fee claim and it was not mentioned in the counterclaim or any earlier motion pleadings. Hirt also asserted that the finance charge disclosed at the closing included various particular fees—notably, other than the appraisal fee—not included by the Act in the finance charge. Lastly, she argued that section 1605(f)(1)(B) of the Act exempting overstatements from liability should be read in light of section 1605(e) imposing liability for including certain charges in the finance charge so that only overstatements other than those expressly listed in section 1605(e) are excluded from liability.

¶ 21    GreenPoint also filed a motion to reconsider the February 2016 partial denial of summary judgment, citing a recently decided case (*Beneficial Illinois Inc. v. Parker*, 2016 IL App (1st) 160186) to argue that Hirt's damages claims were time-barred. Hirt responded, claiming that the aforesaid case was not published and, thus, not citeable and also arguing that her damages claims were timely raised in her counterclaim as provided in section 13-207.

¶ 22    In March 2017, the trial court heard argument on GreenPoint's reconsideration motion and granted summary judgment for GreenPoint on Hirt's statutory damages claims. The court found that damages claims under the Act were time-barred and not preserved by section 13-207. Its order stated that its "ruling completes adjudication of Hirt's claims and renders unnecessary consideration" of GreenPoint's supplemental motion for summary judgment.

¶ 23                                               C. Appeal

¶ 24    On appeal from the summary judgments, Hirt contended that a question of fact remained as to whether she timely rescinded. *GreenPoint Mortgage Funding, Inc.*, 2018 IL App (1st) 170921, ¶ 18. The Act provides that "a loan made in a consumer credit transaction[,] *** secured by the borrower's principal dwelling," may be rescinded by the borrower under the Act up to three business days after the transaction, or up to three years afterwards if the lender "fails to deliver certain forms or to disclose important terms accurately" to the borrower. *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 411 (1998) (citing 15 U.S.C. § 1635 (2012)). The Act permits borrowers to rescind "the transaction" including removal of the security interest on the property and the return of certain fees incurred during the transaction. 15 U.S.C. § 1635(a), (b) (2012). Hirt contended that her right to rescind was extended to three years—May 2008, rendering her February 2008 rescission timely—because GreenPoint failed to provide two copies of the Notice of Right. *GreenPoint Mortgage Funding, Inc.*, 2018 IL App (1st) 170921, ¶ 20.

- 5 -

¶ 25     Hirt acknowledged signing, at the closing, a written acknowledgment that she was provided all the required forms including two copies of the Notice of Right. *Id.* However, section 1635(c) of the Act provides that such a form creates only a "rebuttable presumption of delivery" (15 U.S.C. § 1635(c) (2012)), which Hirt contended was rebutted by her deposition testimony so that there was an issue of material fact. *GreenPoint Mortgage Funding, Inc.*, 2018 IL App (1st) 170921, ¶ 20. We agreed with Hirt that her deposition testimony that she received only one copy of the Notice of Right was sufficient to rebut the presumption created by the acknowledgment and create a genuine issue of material fact. *Id.* ¶¶ 21-22.

¶ 26     We found that the issue of rescission was not rendered moot by U.S. Bank substituting as plaintiff, refinancing Hirt's mortgage, and dismissing the foreclosure complaint. *Id.* ¶¶ 23-25. Section 1635(b) of the Act provides that, "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, *and* shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." (Emphasis added.) 15 U.S.C. § 1635(b) (2012). Accepting that GreenPoint could no longer release the security interest, we found that Hirt could still claim that GreenPoint must "return 'any money or property given as earnest money, downpayment, or otherwise' while still the holder of the mortgage." *GreenPoint Mortgage Funding, Inc.*, 2018 IL App (1st) 170921, ¶ 24 (quoting 15 U.S.C. § 1635(b) (2012)).

¶ 27     We affirmed the March 2017 summary judgment regarding statutory damages. *Id.* ¶ 34. We found that Hirt forfeited on appeal any challenge regarding damages arising out of violations of the Act at the May 2005 closing, preserving only damages arising from GreenPoint not honoring Hirt's rescission. *Id.* ¶ 28. Moreover, we found that section 13-207 did not preserve Hirt's counterclaim because the Act's limitation provision (15 U.S.C. § 1640(e) (2012)) allows untimely claims for setoff or recoupment only, which Hirt's counterclaim was not once the foreclosure complaint was dismissed. *GreenPoint Mortgage Funding, Inc.*, 2018 IL App (1st) 170921, ¶¶ 30-33. We reversed the February 2016 summary judgment on rescission and remanded for an evidentiary hearing on the "disputed factual question as to whether Hirt received the requisite disclosures when the closing took place on May 13, 2005." *Id.* ¶ 36.

¶ 28                           D. Postremand Proceedings

¶ 29     Following remand, and with leave of the trial court, Hirt filed an amended counterclaim in July 2018 adding U.S. Bank as an additional defendant to the rescission claim. However, later in July 2018, Hirt voluntarily withdrew her amended counterclaim with leave to file a second amended counterclaim. Hirt did not file another amended counterclaim.

¶ 30     The court held an evidentiary hearing in February 2019 with Hirt as the sole witness. She testified that she entered into the transaction with GreenPoint in May 2005 to borrow money for medical expenses. She had been through "several" mortgage transactions, having owned "eight different properties over the course of [her] lifetime." On the day of the closing, May 13, 2005, Hirt had a medical appointment—follow-up from an earlier foot surgery that was still causing her pain—in the morning before the closing in the early afternoon.[1] At the closing,

---

[1]Hirt's counsel examined her at length and in detail about her movements and occurrences on the day of closing, from waking up onwards. She answered these questions promptly and fully.

a woman presented Hirt with a packet of documents and asked her to sign at each line indicated by a tab. The woman did not describe the documents to Hirt. For about 15 minutes, Hirt signed as indicated, with nobody else in the room at the time. The woman then returned, took the signed documents to be copied, and again returned and gave Hirt an envelope, telling her that she was "all done." Hirt placed the envelope in her bag and went home.

¶ 31    On the way home, Hirt felt that the closing "didn't smell right" in comparison to her other closings because "no one was there *** to explain anything to me." When she reached home, she placed the envelope in her filing cabinet without taking anything from it or adding anything to it. The next time she saw the envelope was when she removed it from the cabinet to bring to her attorney in 2008. Hirt testified that a certain envelope was the envelope from the closing and recognized the documents inside the envelope as the documents from the closing. At the meeting with her attorney, Hirt and her attorney reviewed the documents in the envelope and found that none were signed, dated, or notarized. There was only one copy of the Notice of Right in the envelope. Hirt then instructed her attorney to send a letter of cancellation. Up to that point, Hirt had made payments on the loan. She stopped making payments "[b]ecause we were in dispute over whether or not I should be paying." A foreclosure action was filed against Hirt after her cancellation.

¶ 32    On cross-examination, Hirt could not recall when the previous refinancing to the closing at issue occurred nor who was the lender on her original refinancing. "Possibly" the previous refinancing to May 2005 was in January 2005. She attributed her superior recall of the events of the day of the May 2005 closing to her foot pain at the time and to her "gut feeling" that the May 2005 closing was not "appropriate." She could not recall on which date her foot surgery was performed, though it caused her significant pain. When Hirt was deposed in 2009, she testified that she did not recall which documents she received or reviewed at the closing nor whether she received signed copies of the closing documents. At the hearing, Hirt acknowledged a copy of the Notice of Right, with her signature, stating that she received two copies thereof. When asked if she reviewed the closing documents before signing, Hirt replied that she signed without reviewing them. Hirt was then shown her deposition testimony that she reviewed the closing documents before signing them. Hirt was current on her loan payments when she went to see her attorney in 2008, and she decided to stop making payments only after that meeting.

¶ 33    When asked why she consulted counsel in 2008 regarding a 2005 loan, Hirt answered that the May 2005 mortgage loan "just didn't feel right" compared to her previous mortgages and a friend recommended an attorney to her. Hirt did not send the envelope or its contents to her attorney before they met in February 2008 to review the envelope's contents together. About a week later, her counsel sent GreenPoint the rescission letter. Hirt acknowledged that she wanted to cancel the GreenPoint mortgage loan "solely based on that, on getting one copy of [the Notice of Right] in your loan packet." Hirt since refinanced the loan on her property more than once but testified that she "had no issue at all" with those loans because she "received the appropriate materials under law." However, when Hirt was shown the closing documents from one of her earlier refinancings, Hirt's counsel stipulated that there was only one copy of the Notice of Right in those earlier closing documents. Hirt did not "go through the packet page by page with" counsel on that earlier loan. Hirt had placed the document packet from that closing in her filing cabinet, as she did with the envelope in this case, and stated "I believed I

never touched them" because she had "no reason to touch them" until she brought those closing documents to her attorney as well.

¶ 34 When asked why she was suing GreenPoint, Hirt replied "because I didn't receive one copy." She understood that only her rescission claim remained from her counterclaim. She acknowledged that the GreenPoint mortgage loan had been since modified but could not recall whether she told U.S. Bank that she was challenging the GreenPoint loan. However, she then acknowledged her 2015 loan modification agreement with U.S. Bank, which stated in relevant part that the May 2005 mortgage loan was still in full force and effect except as modified therein and that the May 2005 documents were a valid, binding, and enforceable agreement.

¶ 35 On redirect examination, Hirt testified that the closing documents from the GreenPoint mortgage loan provided by GreenPoint at the hearing bore her signatures and those of another person, along with the signatures and stamps of a notary. However, nobody was in the room with Hirt when she signed, and she neither added documents to, nor removed documents from, the envelope of closing documents at issue. She denied that anyone mailed her signed copies of the closing documents. The documents, including the Notice of Right, in the envelope Hirt provided her attorney did not have Hirt's signature. By contrast, the closing documents she received from her January 2005 closing, for which she also did not touch the envelope afterwards, were all signed.

¶ 36 When Hirt was asked to consider a settlement statement from the GreenPoint closing, GreenPoint objected. Hirt's counsel explained that Hirt testified on cross-examination that the single copy of the Notice of Right was her only basis for rescission, but counsel wanted to elicit that certain charges on the settlement statement violated section 1605(e) of the Act. The court sustained the objection.

¶ 37 On recross-examination, Hirt testified that her "bad feeling" about the May 2005 closing came from the unsigned closing documents. However, she then acknowledged that she did not examine the contents of the closing envelope until she met with counsel. She attributed her "bad feeling" to the absence of anyone at the closing explaining the documents as she signed them.

¶ 38 On March 22, 2019, the court entered judgment for GreenPoint. The court recited that this court remanded for an evidentiary hearing on whether Hirt received only one copy of the Notice of Right. The court acknowledged that Hirt so testified but found "Hirt's testimony on the whole to be discountable as not credible." Thus, her rescission did not fall under the Act's three-year extended rescission period. The court noted Hirt's detailed recollection of the day of the May 2005 closing on direct examination, contrasted to her inability to recall details of her other loans on cross-examination. The court found that Hirt never testified directly to noticing at the closing that she received only one copy of the Notice of Right. The court noted discrepancies between her hearing and deposition testimony, including her earlier testimony that she reviewed the closing documents before signing them and her later testimony that she did not. The court found that Hirt testified that her suspicion of the closing at issue came from the unsigned documents, but she could not know that her copies of the closing documents were unsigned until she opened the envelope with counsel in 2008 and learned that she received only one copy of the Notice of Right. The court also noted Hirt's evidence that her earlier loan closing documents had the same Notice of Right issue as the GreenPoint mortgage loan and found that "too convenient." Lastly, the court found that the closing document from the U.S. Bank loan modification, in which Hirt represented that the GreenPoint mortgage loan was valid

and binding, worked to "underscore the lack of overall credibility of her testimony." The court concluded that Hirt did not meet her burden of proving by a preponderance of the evidence that she received only one copy of the Notice of Right. This appeal timely followed.

¶ 39                                III. ANALYSIS

¶ 40    On appeal, Hirt contends that the March 2019 judgment was against the manifest weight of the evidence and that GreenPoint violated the Act by including certain fees in a financing statement contrary to section 1605(e) of the Act.

¶ 41                          A. Section 1605(e) Claim

¶ 42    We may briefly dispose of the latter claim. As Hirt notes, she alleged in the trial court that GreenPoint improperly included certain fees in the finance charge at the May 2005 closing in violation of section 1605(e). However, the trial court granted summary judgment for GreenPoint on Hirt's rescission claim in February 2016 and on her statutory damages claims in March 2017, with the two orders disposing of all claims raised in and under her counterclaim. In our earlier opinion, we affirmed the March 2017 summary judgment, reversing and remanding for further proceedings on the rescission claim only. *Id.* ¶¶ 34-36. Specifically, we remanded for an evidentiary hearing on the disputed factual issue of whether Hirt received the requisite two copies of the Notice of Right under the Act. *Id.* ¶¶ 20-22, 36. Thus, regardless of whether our earlier opinion expressly addressed the section 1605(e) claim, we conclude that our earlier affirmance of the summary judgments except for the limited question upon which we reversed and remanded does not leave room for Hirt to now reassert her section 1605(e) claim. For sake of completeness, we also find that the trial court did not err in not allowing Hirt's counsel to examine her in the evidentiary hearing regarding the settlement statement and section 1605(e).

¶ 43                            B. Manifest Weight

¶ 44    When the trial court conducts an evidentiary hearing, we review whether the court's factual findings were against the manifest weight of the evidence and review any questions of law *de novo*. *Forest Preserve District of Cook County v. Royalty Properties, LLC*, 2018 IL App (1st) 181323, ¶ 23. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the finding is unreasonable, arbitrary, or not based on the evidence presented. *Id.* Because the trial court is in a superior position to this court in weighing witness testimony, we do not substitute our judgment for its determinations of credibility and the weight of evidence. *Id.*; *1472 N. Milwaukee, Ltd. v. Feinerman*, 2013 IL App (1st) 121191, ¶ 21. A trier of fact "is free to accept or reject testimony and give whatever weight it deems appropriate to the evidence submitted." *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 26.

¶ 45    A decision that a party raised a question of material fact sufficient to withstand a summary judgment motion is distinguishable from a decision following an evidentiary hearing, with "entirely different burdens." *Forest Preserve District of Cook County*, 2018 IL App (1st) 181323, ¶ 33. For a summary judgment motion, the documents and exhibits must be considered in the light most favorable to the nonmovant, and all well-pleaded facts are taken as true, so that "there is no weighing of the *strength* of the nonmovant's allegations, but only a

determination that there is a question of fact that would entitle the case to move forward." (Emphasis in original.) *Id.*

¶ 46 Here, the trial court's judgment for GreenPoint was based on its determination that Hirt had not shown by a preponderance of evidence that she received only one copy of the Notice of Right, which in turn was based on the court's conclusion that Hirt was not credible. As we stated in our prior appeal, the signed Notice of Right indicated that Hirt received two copies of the Notice of Right, which Hirt then rebutted by her deposition testimony that she received one copy. *GreenPoint Mortgage Funding, Inc.*, 2018 IL App (1st) 170921, ¶¶ 20-22. While Hirt's credibility was not at issue at that point due to the nature of summary judgment, it is clear under such circumstances that Hirt's credibility at the mandated evidentiary hearing was central.

¶ 47 We do not find the court's conclusion that Hirt was not credible to be unreasonable, arbitrary, or not based on evidence. Firstly, Hirt testified to detailed knowledge of her movements and occurrences on the day of the May 2005 closing but then could not recall when her previous refinancing occurred or with which lender. Though she explained her superior recall of the day of closing by noting that her foot was in pain from recent surgery, she also could not recall what date the surgery occurred, which tends to cast doubt on her assertion that pain focused her memory.

¶ 48 Secondly, Hirt's deposition testimony differed significantly from her hearing testimony on the relevant matter of whether she reviewed the documents at the GreenPoint mortgage loan closing in May 2005. In her deposition, she replied "Yes" when asked if she recalled reviewing the documents before signing. However, in her hearing testimony she testified clearly that she did not review the documents and merely signed them where indicated. We do not consider this inconsistency immaterial in light of her testimony that her suspicion of the GreenPoint transaction was based on her account that nobody sat with her as she signed or explained the closing documents to her. If that was contrary to her experience with prior closings, as she testified, then her hearing testimony that she did not review the documents for herself before signing them is even more incongruous.

¶ 49 Lastly, there was hearing evidence that, when Hirt obtained a loan modification from U.S. Bank in 2015 after it purchased the GreenPoint mortgage loan, she agreed that the GreenPoint transaction was still valid, binding, and enforceable. Notably, the 2015 modification resulted in U.S. Bank dismissing the foreclosure complaint against Hirt. At the same time, Hirt was claiming in the trial court through her counterclaim that the GreenPoint transaction was void *ab initio* and that she was thus entitled to damages, attorney fees, and costs. We agree with the trial court that Hirt staking out diametrically opposed positions, to her benefit in each instance, does not speak well to her overall credibility.

¶ 50 In sum, we cannot conclude that the opposite of the trial court's conclusion—that Hirt was credible and proved that she received only one copy of the Notice of Right—is clearly evident.

¶ 51                                             IV. CONCLUSION
¶ 52 Accordingly, we affirm the judgment of the circuit court.

¶ 53 Affirmed.